## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL ELINE,                          :
         **Plaintiff**      :
     **v.**                   :     **3:CV-05-1088**
                            :     **(CHIEF JUDGE VANASKIE)**
TROOPER BRIAN M. MILORE, et al,      :
                            :
         **Defendants**   :

## ORDER

### June 17, 2005

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Plaintiff Paul Eline ("Eline"), a prisoner currently confined in the Schuylkill County Prison, filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds pro se and in forma pauperis ("IFP").  The complaint is before the court for preliminary screening pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

Eline has named twenty-eight (28) defendants, twenty-five (25) of whom are individuals Eline claims ordered either an above-ground or in-ground pool from his corporation but failed to make the required payments on their purchases.  Eline also names three (3) non-purchasers as defendants: Pennsylvania State Trooper Brian M. Milore, the President of M&T Bank, and Governor Edward Rendell.  The basis of Eline's action is that pool purchasers conspired with Trooper Milore to file fraudulent statements in an affidavit of probable cause in order to "injure, oppress, threaten, intimidate, and willfully" deprive Eline of his rights.

Eline asserts that all of the defendants, excluding Trooper Milore, the President of M&T Bank, and Governor Rendell, purchased pools from his corporation, "Old World Farm and Gardens, Inc.," but failed to make the required payment in accordance with their sales contracts.  Eline claims that in order to avoid paying their debts, which were owed to the Eline's corporation, the defendants conspired with Trooper Milore to file false statements in an affidavit of probable cause to obtain his arrest.  Eline also asserts that M&T Bank had a contract with him to process all credit card transactions with Old World Farm and Garden, Inc.  Eline asserts that M&T Bank failed to notify him of any fraudulent transactions that occurred under the corporation's account and that the bank filed a "fraudulent statement" with Trooper Milore in order to create a "false impression" of the corporation. (Complaint at ¶57.)  Eline's final claim is that Governor Rendell failed to protect his constitutional rights because he did not ensure that a thorough investigation of his claims against Trooper Milore was conducted.

Eline's complaint is unclear as to the status of his incarceration.  However, after further investigation, this Court has ascertained that there are two (2) separate state criminal proceeding pending against Eline.  Eline is charged with fifteen (15) counts of theft by deception and forty-four (44) counts of deception or fraudulent business practices in the first criminal proceeding.  In the remaining criminal proceeding, Eline is charged with theft of services.

Under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the district court must dismiss a complaint, or any portion of a complaint, which (a) is frivolous, malicious, or fails to state a claim

2

upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune

from such relief. In determining whether a complaint states a claim for purposes of 28 U.S.C.

§§ 1915(e) and 1915A, the Court must apply the standards used to address a motion to dismiss

under FED. R. CIV. P. 12(b)(6). Under Rule 12(b)(6), a "complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957). "The test for reviewing a 12(b)(6) motion is whether under any reasonable reading of

the pleadings, plaintiff may be entitled to relief." Simon v. Cebrick, 53 F.3d 17, 19 (3d. Cir.

1995). Additionally, a prisoner whose complaint fails to state a cause of action is entitled to

amend his complaint unless doing so would be inequitable or futile. See Grayson v. Mayview

State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

The foundation of Eline's complaint is that he has been wrongfully incarcerated based

upon the allegedly fraudulent statements made by the defendants in the affidavit of probable

cause for his arrest. He seeks declaratory and injunctive relief as well as compensatory and

punitive damages.

The doctrine of abstention which has developed since Younger v. Harris, 401 U.S. 37

(1971), "espouse[s] a strong federal policy against federal-court interference with pending

state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics

Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "Younger abstention," as

the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993). Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. Id.

The specific elements for Younger abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989). All three Younger criteria are met here. First, Eline's claim concerns the separate pending criminal case brought against him in the Schuylkill County Court of Common Pleas. Second, based upon the fact that Eline is attempting to raise issues concerning the validity of his pre-trial incarceration, the proceeding clearly implicates important state interests. Third, the Schuylkill County forum affords Eline an adequate opportunity to raise his federal law issues, such as arrest without probable cause. Eline has not asserted that he is unable to present his federal claims in his related state court proceedings. Thus, this Court may assume that the state procedures will afford an adequate remedy. See Kelm v. Hyatt, 44 F.3d 415, 420 (6th Cir. 1995) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff.").

Exceptions to the Younger doctrine exist where irreparable injury is "both great and immediate," Younger, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," id., at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." Id. at 54. The exceptions are to be narrowly construed. Loftus v. Township of Lawrence Park, 764 F. Supp. 354, 357 (W.D. Pa. 1991). Thus, "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction . . . is federal injunctive relief against state prosecutions appropriate." Perez v. Ledesma, 401 U.S. 82, 85 (1971). Eline has failed to show that he falls within any of the narrow exceptions to the Younger doctrine.

Eline has requested that this Court award both declarative and injunctive relief. Such relief would clearly interfere with the pending state court criminal proceedings. For example, he asks that this Court declare that the acts of the defendants violated his rights and that the Court grant a "preliminary and permanent injunction" directing the defendants "to correct their fraudulent statements and stand trial." (Complaint at ¶63-64.) Dismissal of such claims is plainly warranted.

Eline also seeks to recover monetary relief in the form of compensatory and punitive damages. Our Court of Appeals has recognized that claims for damages that would imply the invalidity of a conviction on pending criminal charges are not cognizable. Smith v. Holtz,

5

87 F.3d 108, 113 (3d Cir.1996).  As the <u>Holtz</u> Court made clear:

> [Section] 1983 actions are subject to the "hoary principle" that
> civil tort actions are not the appropriate vehicle for challenging
> the validity of convictions and sentences. The express objectives
> of this holding were to preserve consistency and finality, and to
> prevent "a collateral attack on [a] conviction through the
> vehicle of a civil suit." . . . *We find that these concerns apply
> equally to claims that, if successful, would necessarily imply the
> invalidity of a future conviction on a pending criminal charge.* A
> claim by a defendant in an ongoing criminal prosecution which
> necessarily challenges the legality of a future conviction on a
> pending criminal charge lies at the intersection of the federal
> habeas corpus statute and the Civil Rights Act of 1871. If such a
> claim could proceed while criminal proceedings are ongoing,
> there would be a potential for inconsistent determinations in the
> civil and criminal cases and the criminal defendant would
> be able to collaterally attack the prosecution in a civil suit. In
> terms of the conflicts which *Heck* sought to avoid, there is no
> difference between a conviction which is *outstanding* at the time
> the civil rights action is instituted and a *potential* conviction on a
> pending charge that may be entered at some point thereafter.

<u>Holtz</u>, 87 F.3d 113 (emphasis in original and added).

The Court in <u>Guerro v. Mulhearn</u>, 498 F.2d 1249 (1st Cir. 1974), also squarely

addressed the issue of abstention where there exists an ongoing state criminal proceeding.

The <u>Guerro</u> court held:

> In any event, whatever cost to the litigant may be involved, there is
> an overriding cost that is avoided. Damage to the smooth operation
> of the administration of criminal justice, injury to the proper
> workings of a federal system, and undermining of congressional
> concern with the functioning of the writ of habeas corpus -- all are

> harms which are prevented by the requirement that a civil rights
> damage action be deferred.

Guerro, 498 F.2d at 1254.

It would be an improper interference with the pending state criminal court proceeding if this Court were to award Eline damages based upon his claim of constitutional rights violations. The adjudication of Eline's constitutional claims in this instant civil right action would require this Court to rule upon issues relevant to the disposition of the state criminal charges, thereby impermissible interfering in the pending state criminal proceeding. As explained in Clark v. Zimmerman, 394 F. Supp. 1166, 1174 (M.D. Pa. 1975):

> To allow state criminal defendants to litigate their constitutional
> claims in civil rights suits for money damages before completion of
> the state criminal process would invite a flanking movement against
> the system of state courts by resort to the federal courts to litigate
> constitutional defenses in civil rights damage actions, thereby
> subverting the orderly functioning of the state criminal process.
> Such suits would introduce an element of uncertainty in state
> criminal proceedings and would expose every state criminal justice
> system to insupportable disruption.

Accordingly, based upon the foregoing analysis Eline's complaint will be dismissed without prejudice. The application of the Younger doctrine of federal non-intrusion in the state criminal process, along with the principle that constitutional issues relevant to the disposition of pending state criminal charges cannot be adjudicated in a federal civil rights damage action, render Eline's complaint frivolous as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

7

1. The above-captioned matter is **DISMISSED, WITHOUT PREJUDICE.**

2. The Clerk of Court is directed to mark this matter **CLOSED**.

3. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania
